IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Case No. 7:18-cr-00048 |
| | ) |
| v. | ) |
| | ) |
| SEAN DENZEL GUERRANT, | ) |
| et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | ) Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Sean Denzel Guerrant's motion to suppress statements made during a June 25, 2017 police interrogation. He claims the interrogation violated the Fifth Amendment because Guerrant did not waive his Miranda rights. Def.'s Mot. to Suppress, ECF No. 173. The government responded, denying that suppression was necessary because Guerrant voluntarily, knowingly, and intelligently waived his Miranda rights. Gov't's Opp. to Mot. Suppress, ECF No. 185. The court held an evidentiary hearing[1] on July 7, 2020 during which it heard argument. For the reasons stated below, the court **DENIES** the motion to suppress.

I.

On June 25, 2017, Guerrant was arrested by the Roanoke City Police Department (RCPD) on two charges: (1) felony eluding in violation of § 46.2-817 of the Code of Virginia,

---

[1] The court heard testimony from Detective Dillon and Task Force Officer Ryan Brady and reviewed the Miranda form in question. Both before and after the evidentiary hearing, the court reviewed video footage of the interrogation.

and (2) felon in possession of a firearm in violation of § 18.2-308.2 of the Code of Virginia. ECF No. 173, at 1. After his arrest, but prior to the issuance of the two felony warrants related to the charges, Guerrant was brought to RCPD headquarters for further questioning. Guerrant contends, and the government does not challenge, that he was in police custody and was not free to leave from the moment he was arrested until the end of the interrogation.

Guerrant was arrested in the early morning hours and was required to wait in the interview room for more than an hour for the investigating officers to arrive. During this period, he remained handcuffed and was provided a drink. After a little more than an hour, Detective Dillon[2] and Task Force Officer (TFO) Ryan Brady entered the room and removed Guerrant's handcuffs. Id. Before asking any questions, Detective Dillon read Guerrant his Miranda rights from a form. Detective Dillon asked:

> Dillon: "I am going to ask you some questions. I don't want you to get all out of shape. I got to read you Miranda. It's to protect you. It's to protect me. So, I'll just read it here verbatim."

After reading from the Miranda form, Detective Dillon asked:

> Dillon: "Do you understand what I just read to you."

Guerrant responded:

> Guerrant: "Yeah."

Detective Dillon then placed the Miranda form on the table in front of Guerrant and said:

> Dillon: "Let me get you to just sign right there."

Guerrant signed the form. Gov. Tr. Ex. 41 ("Interrogation Video") at 1:12:00 through 1:17:00.

---

[2] Although now a Sergeant, Dillon was a Detective at the time of Guerrant's questioning in June 2017. As such, Dillon will be referred to as Detective Dillon in this opinion.

2

Guerrant argues that Detective Dillon maintained control of the Miranda form with his hand which prevented him from being able to read the document. ECF No. 173, at 6. The Miranda form consists of a single page on which the name of the advising Police Officer is recorded at the top, the Miranda rights are enumerated, the individual is asked whether he understands these rights with the option to check "yes" or "no," and the individual is provided a line to sign the document. At the bottom of the page, there is a short form to input the name of the witness to the delivery of Miranda rights and subsequent waiver, the date, the offense to which this interrogation is related, and a line for the advising Police Officer to sign. Waiver Form, ECF No. 185-1. The government argues that the Interrogation Video shows that Guerrant knew he was signing the same document from which Detective Dillon had just read him his rights. ECF No. 185, at 3. The top portion of the form is replicated below:

**ADVISEMENT OF YOUR CONSTITUTIONAL RIGHTS**

_____Det C.L. D.lh_____, a Police Officer of the Roanoke City Police Department advises:

1. You have the absolute right to remain silent without fear of intimidation or retaliation by me or any police officer.
2. You have the right to speak and answer questions, but note my warning that anything you say can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer right now and have him present during the entire time you are being questioned.
4. If you cannot afford to hire a lawyer, one will be furnished to represent you before questioning.
5. If you desire to answer my questions without a lawyer, you may do so, but you may stop at any time you should desire.

**DO YOU UNDERSTAND THESE RIGHTS?** ☑ YES ☐ NO

Sign here if you waive these rights: _____

(07/01) PD-21

At the hearing, Detective Dillon testified that he filled out the Miranda form and had Guerrant sign it, in accordance with common practice in RCPD. Both Detective Dillon and

3

TFO Brady testified that Guerrant signed the Miranda form directly under the listed rights and the question asking whether he understood those rights.

The ensuing interrogation focused primarily on the murder of N.L., a RICO predicate act alleged in this case. At various points during the interrogation, Guerrant stated that he was "a little tipsy right now" and that he was "fucked up" and that his "head was fucked up." ECF No. 173, at 6. Detective Dillon responded by saying "you seem to be okay" and "you're not that tipsy." ECF No. 185, at 6. TFO Brady also says at one point "you ain't tipsy." Id. The court notes that despite these statements, Guerrant readily engaged in a dialogue with the officers and showed no signs of impairment. The government also claims, and the Interrogation Video confirms, that Guerrant made several statements reflecting an affirmative desire to cooperate with the police, such as "I just wanna talk man," "I'm telling you everything," and "Whatever you need me to do [] I swear to God I'll do it." Id. at 4-5. During the course of the interrogation, Guerrant shares with the police alleged information he has about the N.L. murder, implicating other individuals as responsible for the offense while denying his involvement.

## II.

The Fifth Amendment to the Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against compulsory self-incrimination is safeguarded by procedural rules dictating the terms of custodial interrogations. Miranda v. Arizona, 384 U.S. 436, 444 (1966). These rules require law enforcement officers to warn a suspect of his rights and to obtain a waiver of those

4

rights before conducting custodial interrogation, with limited exceptions. United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005).

A suspect is "in custody" for Miranda purposes if "there [was] a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994). The term "interrogation" includes not only "express questioning," but also "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). In deciding whether statements constitute "interrogation," courts focus on the perceptions of the suspect, rather than the intent of the police. Id. The government bears the burden of "demonstrating the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 364 U.S. at 444.

After a suspect has been "adequately and effectively apprised of his rights," he may then choose to waive them. Id. at 467. A defendant's waiver of these Miranda rights is only effective if made "voluntarily, knowingly, and intelligently." Id. at 444. Courts must review the "totality of the circumstances" to determine whether a waiver is valid. Moran v. Burbine, 475 U.S. 412, 421 (1986). A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.

### III.

Guerrant seeks to suppress the statements made during the interrogation, claiming that he did not waive his Fifth Amendment rights. He argues two theories of defective waiver: (1) the manner in which the waiver form was provided to him denied him the opportunity to read the form and therefore his signature was not given knowingly and intelligently; and (2) he was

5

intoxicated during the interrogation which precluded him from comprehending the nature of the document he was signing. In response, the government maintains that Guerrant's waiver was knowingly and intelligently given because, when looking at the totality of the circumstances, Guerrant stated that he understood his rights, signed the Miranda form and readily participated in a lengthy interrogation.

As a preliminary matter, the parties disagree about what is required for effective waiver. Guerrant argues that he can only effectively waive his rights by voluntarily, knowingly, and intelligently signing the waiver form he was provided. See ECF No. 173. In so arguing, Guerrant suggests that only an express waiver qualifies under the Fifth Amendment and that, in his case, the only way he could expressly waive his rights would be by signing the waiver form. On the other hand, the government argues that Miranda rights can be waived expressly or implicitly, and that a suspect need not sign a form to waive his rights effectively as long he is told his rights and chooses to acquiesce with the interrogation anyway. ECF No. 185, at 1. Under Guerrant's theory, if he can show that he did not understand the nature of the document he was signing when he signed it, then he is entitled to suppression of the statements made. Under the government's theory, even if Guerrant did not comprehend the nature of the document he was signing, he could still waive his rights as long as he had the capacity to understand the rights being read to him and chose to cooperate anyway. The government's argument prevails.

In the Fourth Circuit, a defendant need not expressly waive his Miranda rights to satisfy the Fifth Amendment; indeed, an implied waiver through action consistent with waiver is sufficient. "Thus, a defendant's 'subsequent willingness to answer questions after

6

acknowledging [his] Miranda rights is sufficient to constitute an implied waiver.'" United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996) (quoting United States v. Velasquez, 626 F.2d 314, 320 (3rd Cir. 1980)). When an officer reads defendant his rights out loud, asks whether the defendant understood those rights, and waits for an affirmative answer before initiating the interrogation, then the Fifth Amendment is satisfied. Id.; see also United States v. Adams, 462 F. App'x 369, 377 (4th Cir. 2012) (finding valid waiver where Mirandized defendant answered questions despite refusing to sign formal waiver). A defendant's acknowledgement that he heard and understood his rights combined with his decision to answer the officer's questions constitutes an implied waiver. Id.

Guerrant was advised of his rights orally and was asked to confirm he understood his rights, which he did. Although the form was presented to him relatively quickly, Guerrant did not hesitate to sign it. Guerrant proceeded to cooperate in a multi-hour interrogation. By his conduct, Guerrant both expressly and impliedly waived his Miranda rights.

The pivotal question to be addressed whether Guerrant's waiver was made knowingly and intelligently. "[A] waiver may very well have been voluntary (that is, uncoerced) and yet given without a knowing and intelligent waiver of Miranda rights." United States v. Cristobal, 293 F.3d 134, 142 (citing Moran, 475 U.S. at 421). A waiver will be deemed knowing and intelligent if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421. On a motion to suppress, the government bears the burden of proving, by a preponderance of the evidence, that the defendant's waiver of his Miranda rights was knowing and voluntary. United States v. Robinson, 404 F.3d 850, 860 (4th Cir. 2005).

7

When a defendant claims he was unable to comprehend his rights prior to interrogation, "the knowingness of the waiver often turns on whether the defendant expressed an inability to understand the rights as they were recited." United States v. Hunter, 63 F. Supp. 3d 614, 622 (E.D. Va. 2014) (citing Robinson, 404 F.3d at 860). Although the government acknowledges that Guerrant stated several times that he was "tipsy" and that his head was "fucked up," it emphasizes that he never communicated that he did not understand his rights. In fact, after hearing his Miranda rights read out loud, Guerrant confirmed that he understood them and signed the form confirming his understanding.

Guerrant now claims he could not comprehend his rights as they were read to him and provided to him on paper due to his intoxication. The test of whether a person is too affected by alcohol or other drugs to voluntarily and intelligently waive his rights is one of coherence, of an understanding of what is happening. United States v. Smith, 608 F.2d 1011, 1012 (4th Cir. 1979). In United States v. Walker, the Fourth Circuit said that waiver was effective as long as defendant was not "so inebriated that he really had no meaningful understanding of what was being told or what he was being asked" and that "obvious but not extreme" impairment was insufficient. 607 F. App'x 247, 256-57 (4th Cir. 2015).

Plainly, the standard enunciated in Smith and Walker was not met here. First, despite his comments, Guerrant exhibited no visible signs of intoxication. At the hearing, Detective Dillon testified that, in his experience as a law enforcement officer, intoxicated individuals emit an odor of alcohol, have bloodshot eyes, are unsteady on their feet, and slur their speech. Detective Dillon confirmed that Guerrant exhibited none of these signs at any point during the interrogation, which led him to conclude Guerrant was not under the influence of alcohol

8

or drugs. The court's review of Guerrant's demeanor and responses to questions throughout the interrogation corroborates Detective Dillon's testimony and a finding that Guerrant understood what he was being asked and that he was coherent.

In determining whether defendant was sufficiently incapacitated, the court can look to the content of defendant's statements made during the interrogation. Hunter, 63 F. Supp. 3d at 623 ("Defendant intelligently responded to police efforts to obtain confessions, and even challenged the quality of the evidence against him."). Guerrant responded to the officer's questions clearly and with details he recalled about the subject of the interrogation for several hours, which refutes the notion he was severely impaired. In fact, the Interrogation Video shows that Guerrant demonstrated an ability to understand the circumstances and their significance to the point of challenging the officers' questions and characterizations of what he said. The government argues that Guerrant was not only able to respond to questions thoroughly and intelligently, but that they also believed he engaged strategically to secure his release by implicating others in criminal activities without incriminating himself. ECF No. 185, at 5. At the hearing, Detective Dillon testified that he believed Guerrant's responses seemed to reflect an understanding that cooperating with the police may be beneficial to him and that Guerrant tactically claimed he was intoxicated directly after providing critical bits of information.

In assessing a defendant's level of comprehension, the court can also take into account circumstantial evidence such as the defendant's familiarity with the criminal justice system. See e.g., United States v. Gualtero, 62 F. Supp. 3d 479, 486 (E.D. Va. 2014) (finding defendant, a Colombian police officer's claim that he did not read the Spanish form enumerating his

9

Miranda rights not credible given his familiarity with the criminal justice system); Cristobal, 293 F.3d at 142 (noting relevance of the fact that suspect had previously been given Miranda rights); Bone v. Polk, 441 F. App'x 193, 197 (4th Cir. 2011) (concluding defendant must have understood his Miranda rights given his previous interactions with law enforcement); Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995) ("Although Correll possessed an I.Q. of only 68, he was 24 years old and had had numerous experiences with law enforcement"). The government provided evidence that Guerrant had previously received and waived his Miranda rights. See Gov't Resp. to Mot. to Suppress, Ex. B, ECF No. 185-3.

Based on the testimony offered during the hearing and review of the Interrogation Video, the court finds Guerrant knowingly and intelligently waived his Fifth Amendment rights. Guerrant heard his Miranda rights, verbally confirmed he understood them, signed a document waiving them, and proceeded to participate thoroughly and coherently in several hours of questioning. Guerrant's assertions that he was "tipsy" and "fucked up" notwithstanding, the court's review of the Interrogation Video confirms the officer's testimony that Guerrant did not appear to be intoxicated sufficient to invalidate his clear waiver of his rights. Indeed, the interrogating officers actually perceived Guerrant's claims of intoxication as tactical. Given all this evidence, the government has plainly met its burden of establishing that Guerrant was advised of and understood his Miranda rights and knowingly and intelligently waived them. Accordingly, his motion to suppress the statements from his June 25, 2017 interrogation is **DENIED.**

An appropriate order will be entered.

Entered: August 10, 2020

Michael F. Urbanski
Chief United States District Judge