IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:18-cr-48 |
| v. ) | |
| ) | |
| SEAN DENZEL GUERRANT, ) | By:   Michael F. Urbanski |
| et al., ) | |
|     Defendants. ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Sean Denzel Guerrant's motion to sever trial from codefendant Demonte Rashod Mack, ECF No. 300. Guerrant argues that introducing evidence of codefendant Trayvone Raycron Kasey's robbery and murder of M.G. would be unduly prejudicial to Guerrant because he did not have personal involvement in M.G.'s murder. Id. The government opposes, arguing that Guerrant continued to run the Rollin' 30s gang from jail before and after M.G.'s murder, and although he did not have personal involvement, M.G.'s murder was in furtherance of gang activity. ECF No. 308. For the reasons stated on the record at the May 19, 2021 hearing and below, defendant Guerrant's motion to sever is **DENIED**.

I.

Defendant Sean Denzel Guerrant was the leader of the Rollin' 30s Crips street gang in Roanoke, Virginia.[1] Guerrant's codefendants, Demonte Rashod Mack, Trayvone Raycron

---

[1] The facts recited in this Memorandum Opinion are those alleged by the government as reflected in the pleadings, briefing, and statement of facts associated with codefendant plea agreements.

1

Kasey, and Chauncey Dion Levesy, are also members of the Rollin' 30s.[2] Trayvone Kasey Statement of Facts, ECF No. 235, at 1. Guerrant would often recruit younger males into the gang, two of whom were D.F. and N.L. Id. at 2. Both D.F. and N.L. had a falling out with the Rollin' 30s, and on June 14, 2017, Guerrant ordered N.L. to kill D.F. Separately, Guerrant ordered Mack and Kasey to kill N.L. if he failed to kill D.F. Id.

On June 15, 2017, Kasey drove with N.L. and D.F. to a party, while Mack and Levesy followed behind. The cars parked at a Roanoke apartment complex, and, after having been inconspicuously warned by N.L., D.F. immediately got out and ran. Gov't Br. in Opp'n to Mot. to Sever, ECF No. 308, at 4. Kasey and Mack then struggled with N.L. to retrieve the firearm he was holding. Kasey gained control of the firearm, and both Kasey and Mack shot at N.L. as he fled. N.L. hid but was discovered by Mack. As Kasey watched, Mack shot N.L. Kasey Statement of Facts at 2-3. Mack and Kasey then left N.L. on the ground, and N.L. died from his wounds. Kasey and Mack drove back to the so-called trap house where the other Rollin' 30s members were located and told Guerrant about what just transpired. Id. at 3. Guerrant instructed another gang member to take Mack and Kasey's firearms and bury them. Id.

On June 25, 2017, Guerrant was arrested on unrelated state charges. Throughout his incarceration, Guerrant continued participating in gang activities. On June 27, 2017, Guerrant made several jail calls, instructing two Rollin' 30s members, A.P. and T.S., to run the gang in his absence. Gov't Br. in Opp'n to Mot. to Sever at 5. Kasey began to question the toughness

---

[2] Defendants Kasey and Levesy have both entered into plea agreements. The remaining defendants are Guerrant and Mack.

of the Rollin' 30s under A.P.'s direction. Id. Around this time, Mack became worried about Kasey's loyalty because Kasey could tie Mack to N.L.'s murder. Id. at 6. As such, Mack considered killing Kasey. Id.

As acting head of the Rollin' 30s, A.P. received updates on gang members' activities. On February 8, 2018, Kasey notified A.P. that he ran out of marijuana and planned to obtain some the next day. Kasey then agreed to purchase some from M.G. on February 9, 2018. Id. Kasey reached out to M.G. on Facebook to facilitate this drug purchase. Kasey Statement of Facts at 3. The two agreed that Kasey would purchase one ounce of marijuana from M.G. for $190. Id. Although Kasey agreed to the $190 purchase, he lacked sufficient funds to do so and did not intend on obtaining them. Id. at 3-4; Gov't Br. in Opp'n to Mot. to Sever at 6. Prior to meeting up with M.G., Kasey spoke with Mack and Levesy about robbing M.G. of his marijuana if the situation looked favorable. Id.

Later that day, Mack and Levesy walked with Kasey to meet up with M.G. to purchase the marijuana. However, Mack and Levesy stayed out of sight while Kasey approached M.G.'s car. Kasey Statement of Facts at 4. A struggle ensued, concluding with Kasey shooting M.G. and stealing M.G.'s marijuana. Mack watched Kasey shoot M.G. and congratulated him on the murder, saying, "I taught you well." Gov't Br. in Opp'n to Mot. to Sever at 6-7. Mack, Levesy, and Kasey then fled the scene. After retreating, Mack, Levesy, and Kasey shared in the profits of M.G.'s stolen marijuana, and the three discussed how to get rid of Kasey's gun used to commit the crime. Id. at 6. M.G.'s murder increased Kasey's standing in the Rollin' 30s and cemented his loyalty to the gang. Id.

Following M.G.'s murder, Guerrant continued providing instruction for the Rollin' 30s. On May 24, 2018, Guerrant engaged in a jail call soliciting witness tampering concerning a member of the Rollin' 30s who he thought was snitching. Id. at 7. On July 30, 2018, Guerrant had another jail call where he discussed his recruitment of a young member for the Rollin' 30s who was currently incarcerated. Id. at 7-8. After Guerrant was indicted on federal charges on November 19, 2018, Guerrant again discussed witness tampering, stating that he would have D.F. beaten up. Id. at 8.

## II.

Multiple defendants may be "charged in the same indictment if they are alleged to have 'participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.'" United States v. Cooper, 624 F. App'x 819, 822 (4th Cir. 2015) (quoting Fed. R. Crim. P. 8(b)). Moreover, joint trials of defendants who are indicted together is preferred in the federal system because it promotes judicial efficiency. Id.; United States v. Zafiro, 506 U.S. 534, 537 (1993). The presumption of a single trial for defendants indicted together is "especially strong" in conspiracy cases. United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990); see also United States v. Dinkins, 691 F.3d 358, 368 (4th Cir. 2012); United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986).

However, Rule 14 of the Federal Rules of Criminal Procedure allows a district court to grant severance if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. Severance is rarely granted when defendants are properly joined. United States v. Hornsby, 666 F.3d 296, 309 (4th Cir. 2012). Severance is warranted only when "'there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Najjar, 300 F.3d 466, 473 (4th Cir. 2002) (quoting Zafiro, 506 U.S. at 539). The defendant bears the burden of showing that "actual prejudice would result from a joint trial, . . . and not merely that a separate trial would offer a better chance of acquittal.'" Id. (quoting United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)). Specifically, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . or 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" Id. at 474 (citations omitted).

### III.

Guerrant contends that because he was in the custody of the Roanoke City Jail on the day of M.G.'s murder, he could not have had any personal involvement with said crime. As such, Guerrant asserts that any evidentiary introduction of M.G.'s murder would compromise his Fifth Amendment right to be presumed innocent and would prevent the jury from making a reliable judgment as to his guilt or innocence. ECF No. 300 at 3-4. Moreover, Guerrant argues that evidence of M.G.'s murder would task Guerrant with defending himself against the murders of both N.L. and M.G. He contends that the jury will conflate M.G.'s murder with N.L.'s murder as it relates to Guerrant's involvement, and Guerrant further asserts that no limiting instruction will rectify this harm. As such, Guerrant argues that evidence of M.G.'s murder will be unduly prejudicial, necessitating severance. See, e.g., United States v. Oloyede, 933 F.3d 302, 311-12 (4th Cir. 2019); United States v. Qazah, 810 F.3d 879, 891 (4th Cir.

2015); United States v. Hackley, 662 F.3d 671, 684 (4th Cir. 2011); United States v. Harris, 498 F.3d 278, 291-92 (4th Cir. 2007); Najjar, 300 F.3d at 473.

Specifically, Guerrant argues that the government's evidence of his involvement with M.G.'s murder is strained. Guerrant was incarcerated on June 25, 2017, and made three phone calls to unindicted Rollin' 30s members from jail shortly after his arrest. Guerrant argues that the temporal distance between the June 2017 phone calls and February 2018 M.G. murder is insufficient to associate Guerrant with M.G.'s murder. The government intends to introduce jail phone calls both before and after M.G.'s murder to prove that Guerrant continued engaging in gang affairs after he was incarcerated.

Lastly, Guerrant argues that the court can grant severance by using a hybrid Federal Rules of Evidence 404(b) and 403 test, articulated in United States v. Queen, 132 F.3d 991 (4th Cir. 1997). In Queen, a defendant was charged with conspiracy to witness tamper and witness tampering from 1994 to 1995, attempting to prevent a witness from testifying in a drug trafficking trial. The defendant filed a motion in limine to exclude evidence that Queen had previously tampered with a witness in 1986. The Fourth Circuit stated a four-pronged test for admissibility of the evidence under Rules 404(b) and 403:

> 1. [T]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes;
> 2. [T]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense;
> 3. [T]he evidence must be reliable; and
> 4. [T]he evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

Queen, 132 F.3d at 997. Finding that Queen's 1986 witness tampering was relevant and probative to prove a substantive element of the 1994 and 1995 tampering, the Fourth Circuit affirmed the district court's admission of the prior bad act, holding that the evidence was "worth consideration" by a jury. Id. at 998. Specifically, Guerrant argues that the fourth prong is instructive.

The government opposes severance, arguing that as the leader of the Rollin' 30s, introduction of gang activities is not unfairly prejudicial to Guerrant even if Guerrant was not personally involved in M.G.'s murder. Guerrant recruited and directed gang members to engage in violent activities. ECF No. 308 at 9-10. Moreover, the government contends that M.G.'s murder is inextricably linked to N.L.'s murder, which Guerrant ordered. The government proffers that it can show Guerrant remained active in the Rollin' 30s after his arrest and following M.G.'s murder. The government alleges that Guerrant encouraged obstruction and witness intimidation, recruited new Rollin' 30s members while incarcerated, and continued to provide direction to the gang's acting leader, A.P. ECF No. 308 at 10. Therefore, it is not unfairly prejudicial to introduce evidence of M.G.'s murder at the hands of the Rollin' 30s even though Guerrant himself was incarcerated at the time.

The government argues that this case resembles United States v. Dinkins, 691 F.3d 358 (4th Cir. 2012). In Dinkins, three defendants were tried together on charges relating to murdering government witnesses, murdering a coconspirator, and various narcotics and weapons offenses stemming from the defendants' involvement in a drug-trafficking conspiracy. The defendants moved to have separate trials; however, the district court denied severance. Defendants appealed, arguing that they suffered prejudice from the joint trial

because "(1) the jury was presented with evidence of multiple murders, akin to a 'blizzard of violence,' even though each murder was not attributable to every defendant; (2) [one] defendant . . . who was not subject to receiving the death penalty should not have had his case joined for trial with [the other] defendants who were facing the possible imposition of th[e death] penalty; and (3) [one] defendant presented a defense that was mutually antagonistic to the defenses presented by [the others]." Dinkins, 691 F.3d at 367. The Fourth Circuit affirmed, holding that (1) while each defendant was not charged with the same murder, every defendant was charged with a murder in furtherance of their drug conspiracy, resulting in no prejudice from trying them together; (2) under Buchanan v. Kentucky, 483 U.S. 402, 415-20 (1987), simply because one defendant was not eligible for the death penalty does not unduly prejudice him in a joint trial with death-penalty eligible codefendants; and (3) antagonistic defenses or hostility amongst defendants is insufficient to meet the burden required to grant severance. Dinkins, 691 F.3d at 368-69.

Furthermore, the government contends that under a Rule 403 analysis, courts have permitted evidence of murder in conspiracy cases even when none of the defendants were personally involved. See United States v. Ramirez-Rivera, 800 F.3d 1, 44 (1st Cir. 2015), abrogated on other grounds by United States v. Leonar-Aguirre, 939 F.3d 310 (1st Cir. 2019) ("And we have previously held that when the scope of a RICO conspiracy includes murder as a tool to further the enterprise, a murder is still relevant to the RICO counts as it tended to prove the existence and nature of the RICO enterprise and conspiracy, even when all the indicted defendants are not charged for the particular killing.").

Lastly, the government asserts that even if Guerrant were to suffer any prejudice from a joint trial, the prejudice could be mitigated by limiting instructions. See Dinkins, 691 F.3d at 368 (stating that severance is a drastic remedy and any prejudice that may occur from a joint trial can be remedied with limiting instructions); Najjar, 300 F.3d at 475 (holding that any prejudice defendants may have suffered was cured by proper limiting instructions); United States v. Hayden, 85 F.3d 153, 160 (4th Cir. 1996) ("Often, less drastic measures, such as limiting instructions, act to cure any risk of prejudice."); see also United States v. Lazo, 816 F. App'x 752, 759-60 (4th Cir. 2020) (affirming the district court where it did not sever defendants' trial and gave limiting instructions that focused the jury on each defendant's individual culpability); United States v. Mouzone, 687 F.3d 207, 219 (4th Cir. 2012) (finding the same).

The court agrees that severance is not warranted in this case. At argument, Guerrant conceded that case law disfavors severance of properly joined codefendants. See, e.g., Oloyede, 933 F.3d at 311-12 (affirming denial of severance because defendants did not meet their threshold of showing joint trial disparity would amount to undue prejudice); Qazah, 810 F.3d at 891 (holding that defendant "comes nowhere close to satisfying th[e] standard" of granting severance); Hackley, 662 F.3d at 684 (denying severance where defendant did not show clear prejudice or abuse of district court discretion in granting joint trial); Harris, 498 F.3d at 291-92 (finding that the district court did not err in denying severance when it gave proper limiting instructions to jury); Najjar, 300 F.3d at 473 (affirming district court's denial of severance because defendant's concerns about prejudice were merely speculative).

Although Queen does not address severance, Guerrant cites it to support his underlying fairness argument. However, a joint trial is not unfair based on the facts of this case. In the light most favorable to the government, the government can provide evidence of Guerrant's continued involvement with the Rollin' 30s even after his incarceration. Two days after being incarcerated, Guerrant instructs A.P. to run the gang. Weeks before M.G.'s murder, A.P. says Guerrant will call him in order to provide further instruction and guidance for how to operate the Rollin' 30s. The same gang members who were involved in N.L.'s murder were involved in M.G.'s murder. Following M.G.'s murder, Guerrant remained active in gang conduct by encouraging obstruction of justice, recruiting new gang members from prison, and condoning violence. Because Guerrant continued orchestrating gang conduct, all of the Rollin' 30s's reasonably foreseeable criminal activities are admissible as to Guerrant on the RICO conspiracy charge regardless of his personal involvement. M.G.'s murder directly relates to increasing Kasey's standing in the gang and provided the gang with profits from M.G.'s stolen marijuana. Moreover, M.G.'s murder solidified the loyalty to the Rollin' 30s between Mack, who murdered N.L. per Guerrant's instruction, and Kasey.

Guerrant emphasizes the lack of temporal proximity between Guerrant's jail phone calls and M.G.'s murder. However, the phone calls support the allegation that Guerrant continued his involvement with the Rollin' 30s and its operations both before and after M.G.'s murder. As such, it is not unfair to introduce evidence of gang activities undertaken under Guerrant's gang leadership even if Guerrant was not personally involved in every act. As to Guerrant, M.G.'s murder is relevant to proving the RICO gang conspiracy, and its probative value is not substantially outweighed by unfair prejudice.

Similar to Najjar, Guerrant is making speculative assertions that a joint trial would be too prejudicial for proper limiting instructions to cure. But Guerrant's vague assertions of jury confusion and prejudice are insufficient to meet the demanding standard set forth in Najjar. A joint trial does not amount to such a disparity in providing an adequate defense to warrant severance in this case. Here, each defendant is charged with acts in furtherance of a RICO conspiracy, and each is charged with involvement in at least one murder. Like Dinkins, it is immaterial that each defendant did not engage in every criminal act. Because the defendants are charged with participating in violent acts, including murder, as a part of this RICO conspiracy, a joint trial presents no prejudice to codefendants based on the facts of this case.

In sum, Guerrant fails to show that "there is a serious risk that a joint trial would compromise [his] specific trial right[s] or prevent the jury from making a reliable judgment about guilt or innocence" as required under Najjar. Moreover, Guerrant does not present evidence to support why the drastic remedy of severance is necessitated here. Juries are presumed to follow their instructions, United States v. Chong Lam, 677 F.3d 190, 204 (4th Cir. 2012), and where there is insufficient evidence of a joint trial resulting in undue prejudice, limiting instructions are the appropriate remedy, see Dinkins, 691 F.3d at 368; Najjar, 300 F.3d at 475.

### VI.

Guerrant fails to show a particularized harm that will result from a joint trial. As leader of the Rollin' 30s, the introduction of the gang's violent activities does not present undue prejudice to Guerrant. Accordingly, evidence of M.G.'s murder as to Guerrant is admissible, and the motion to sever is **DENIED**.

An appropriate order will be entered.

Entered: May 24, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.05.24 19:01:11 -04'00'

Michael F. Urbanski
Chief United States District Judge